IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
|     Plaintiff, | * |
| | * |
|     v. | *  CIVIL NO. L-02-3697 |
| | * |
| 5 JENKINS ROAD, CHESAPEAKE, MD, | * |
|     Defendant, | * |
| | * |
|     and | * |
| | * |
| WAYNE M. BYERLY | * |
|     Claimant, | * |
| | * |
|     and | * |
| | * |
| GMAC MORTGAGE CORPORATION, | * |
|     Claimant. | * |

\* \* \* \* \* \* \* \*

## STIPULATED EXPEDITED SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED by and between plaintiff, United States of America ("United States"), and Claimant, GMAC Mortgage Corporation (GMAC Mortgage), to compromise and settle GMAC Mortgage's claim according to the following terms:

1. The parties hereby stipulate that any violations of 21 U.S.C. Section 841 involving the defendant property occurred without the knowledge and consent of GMAC Mortgage.

2. The United States agrees that upon approval of this agreement and sale of the property, it will pay GMAC Mortgage the following:

    a. all unpaid principal due to the Claimant under the Note dated January 25, 1994, a copy of which is attached hereto as **Exhibit A**, which is secured by a Deed of Trust also dated January 25, 1994,

a copy of which is attached hereto as **Exhibit B**, that is $22,853.50 (minus any payments on principal made by any person or entity subsequent to April 8, 2003) as indicated in the Payoff Statement dated April 8, 2003, a copy of which is annexed hereto as **Exhibit C**; and

    b. all unpaid interest at the contractual (not default) rate under the above mortgage instruments, that is 6.625%, assessed as specified in the Note, until the date of payment; and

    c. all unpaid casualty insurance premiums for the defendant property from the date of termination or expiration of the existent coverage to the date of payment.

    3. The payment to GMAC Mortgage shall be in full settlement and satisfaction of any and all claims by GMAC Mortgage to the defendant property, and all claims resulting from the incidents or circumstances giving rise to this lawsuit.

    4. Upon payment, GMAC Mortgage agrees to assign and convey both the promissory note and the security interest to the United States via recordable documents and to release and hold harmless the United States, and any agents, servants, and employees of the United States (or any state or local law enforcement agency) acting in their individual or official capacities, from any and all claims by the financial institution and its agents which currently exist or which may arise as a result of the government's action against the defendant property.

    5. As a part of settlement, Claimant GMAC Mortgage agrees not to pursue against the United States any other rights that it may have

2

under the mortgage instrument including but not limited to the right to pursue a foreclosure action; except that if the payment outlined in paragraph 2 above has not been made at least within 180 days following the entry of the final order of forfeiture, then GMAC Mortgage may pursue a foreclosure action.

6. Claimant GMAC Mortgage agrees to notify the U.S. Attorney and U.S. Marshal's Service at the end of the first payment cycle in which a payment is not made under the terms specified in the note; the United States agrees to file a motion for interlocutory or stipulated sale of the defendant property within 30 days of receipt of such notice. Claimant GMAC Mortgage further agrees to join any government motions for interlocutory or stipulated sale of the defendant property and any motions to remove occupants from the property who fail to abide by the terms of an occupancy agreement, within ten (10) days of GMAC Mortgage's receipt of the motion(s).

7. Claimant GMAC Mortgage understands and agrees that by entering into this expedited settlement of its interests in the defendant property, it waives any rights to further litigate against the United States its interest in the defendant property and to petition for remission or mitigation of the forfeiture. Unless specifically directed by order of this Court, GMAC Mortgage is hereby excused and relieved from further participation in this action.

8. The parties agree to execute further documents, to the extent necessary, to convey clear title to the property to the United States and to further implement the terms of this settlement.

9. GMAC Mortgage understands and agrees that the United States reserves the right to void this Expedited Settlement agreement and terminate the forfeiture action at any time for legal reasons or within ninety (90) days after the date of this agreement for economic reasons.

10. The terms of this settlement agreement are contingent upon the entry of an interlocutory sale order, or forfeiture of the defendant property to the United States and the Court's entry of a Final Judgment of Forfeiture specifically forfeiting the above-captioned defendant property. Further, this settlement agreement shall be submitted to the Court for approval and any violation of any terms or conditions shall be construed as a violation of an Order of the Court.

Thomas M. DiBiagio
UNITED STATES ATTORNEY

6-4-03
Date

Richard C. Kay
Assistant United States Attorney
Attorney for Plaintiff
United States of America

For GMAC Mortgage,

6/11/03
Date

Mark Hardcastle
Counsel for GMAC Mortgage

4

# NOTE

| | | | LOAN # | 4-821792-71 |

JANUARY 25, 1994    BOWIE,    MD

[City]    [State]

5 JENKINS ROAD    CHESAPEAKE CITY    MD   21915

[Property Address]

*Certified true copy*
*Kathleen Prohmski*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 45,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

GMAC MORTGAGE CORPORATION OF PA

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on MARCH 01, 1994. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on FEBRUARY 01, 2009, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 8360 OLD YORK ROAD, ELKINS PARK, PA 19117-1590

or at a different place if required by the Note Holder

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 395.10 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _____*Wayne m Byerly*_____(Seal)
WAYNE M. BYERLY                                    -Borrower
SSN:

_____(Seal)
                                                   -Borrower
SSN:

_____(Seal)
                                                   -Borrower
SSN:

_____(Seal)
                                                   -Borrower
SSN:

*(Sign Original Only)*

-5A (9105).01                Page 2 of 2                Form 3200 12/83

When Recorded Return to:
GMAC Mortgage
8360 Old York Road
Elkins Park, Pa 19117

3-28-94

[Space Above This Line For Recording Data]

# DEED OF TRUST

LOAN # 4-821792-71

THIS DEED OF TRUST ("Security Instrument") is made on JANUARY 25, 1994 . The grantor is

WAYNE M. BYERLY

("Borrower"). The trustee is CHARLES ELLINGER AND SANDRA FORSTER

("Trustee"). The beneficiary is GMAC MORTGAGE CORPORATION OF PA

which is organized and existing under the laws of PENNSYLVANIA , and whose address is 8360 OLD YORK ROAD, ELKINS PARK, PA 19117-1590

("Lender"). Borrower owes Lender the principal sum of FORTY-FIVE THOUSAND AND 00/100 ********************************************

Dollars (U.S. $ 45,000.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on FEBRUARY 01, 2009 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in CECIL County, Maryland:

ALL THAT LAND SITUATED IN THE COUNTY OF CECIL, STATE OF MARYLAND, AND DESCRIBED AS FOLLOWS:
ALL THAT LOT OF GROUND SITUATE IN TH ESECOND ELECTION DISTRICT OF CECIL COUNTY, STATE OF MARYLAND, AND BEING KNOWN AND DESIGNATED AS LOT NO. 25, ON A PLAT ENTITLED " CRESWELL FOREST, SECTION TWO", AS RECORDED AMONG THE CECIL COUNTY LAND RECORDS IN PLAT BOOK WAS 5, FOLIO 53

which has the address of 5 JENKINS ROAD, CHESAPEAKE CITY [Street, City],
Maryland 21915 [Zip Code] ("Property Address");

MARYLAND -Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Page 1 of 6    Form 3021 9/90
                                                                                        Amended 5/91
VMP -6R(MD)(9105)    VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291    Initials: WMB

BOOK0479 PAGE279

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Form 3021 9/90

-6R(MD)(9105)        Page 2 of 6        Initials: _____

BOOK 0470 PAGE 274                                          LOAN #:  4-821792-71

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

VMP -6R(MD)(9105)                          Page 3 of 8                                                Form 3021 9/90
                                                                                                       Initials: WML

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.00 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Subtitle W of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 21 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs.

23. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 21 of this Security Instrument.

Form 3021 9/90
Initials: _W_ _h_

BOOK0479 PG277                              LOAN #:  4-821792-71

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Carrie L. Deegan_

X _Wayne M. Byerly_ (Seal)
WAYNE M. BYERLY                    -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
                            -Borrower

STATE OF MARYLAND,   City of Baltimore   County ss:
I Hereby Certify, That on this 25th day of JANUARY, 1994, before me, the subscriber, a Notary Public of the State of Maryland, in and for the City of Baltimore, personally appeared
WAYNE M. BYERLY

known to me or satisfactorily proven to be the person(s) whose name(s) IS subscribed to the within instrument and acknowledge that he executed the same for the purposes therein contained.
  AS WITNESS: my hand and notarial seal.
My Commission Expires:  August 19, 1996       _Carrie L. Deegan_
                                                Notary Public

STATE OF Maryland              , City of Baltimore County ss:
I Hereby Certify, That on this 25th day of January, 1994, before me, the subscriber, a Notary Public of the State of Maryland and for the City of Baltimore, personally appeared
Kim L. Baltimore
the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or the person responsible for disbursement of funds in the closing transaction or their respective agent at a time later than the execution and delivery by the Borrower of this Deed of Trust, and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.
  AS WITNESS: my hand and notarial seal.
My Commission Expires: August 19, 1996       _Carrie L. Deegan_
                                              Notary Public
This is to certify that this document was prepared ~~xxxxxxxxxxxxxxxxx~~ under the supervision of by GMAC MORTGAGE CORPORATION OF PA,
a party secured under the Deed of Trust,          one of the parties named in the instrument.

                                      For _Diane S. Wade_
                                          GMAC MORTGAGE CORPORATION OF PA
                                          Diane S. Wade
                                          Loan Closer

-6R(MD)(9105)                   Page 6 of 6                          Form 3021 9/90

the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**MULTISTATE FIXED RATE NOTE** - Single Family - **FNMA/FHLMC UNIFORM INSTRUMENT**

Page 1 of 2

VMP -5A (9105).01       VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Form 3200 12/83
Amended 5/91

X Initials: WmB

VMP -5A (9105).01

Page 2 of 2

Form 3200 12/83

BK0470 0072

### REFINANCE CLAUSE ATTACHMENT TO DEED OF TRUST

I CERTIFY THAT THIS IS A REFINANCING OF A PRIOR DEED OF TRUST OR MORTGAGE ON MY PRINCIPAL RESIDENCE, THAT AT THE TIME OF PRINCIPAL RESIDENCE, THAT AT THE TIME OF PURCHASE MY RESIDENCE WAS ENCUMBERED WITH A PURCHASE MONEY MORTGAGE OR DEED OF TRUST AND THAT 12 PASSED SINCE THE RECORDING OF THAT PURCHASE ONLY MORTGAGE/DEED OF TRUST. I CERTIFY THAT I WAS THE ORIGINAL MAKER ON THAT MORTGAGE/DEED OF TRUST. THE PRIOR DEED OF TRUST IS RECORDED IN LIBER 188 AT FOLIO 160 AND IS BEING EXTINGUISHED WITH A PAYOFF OF $52,077.61.

```
REC FEE    32.00
SURCH 5     5.00
POSTAGE      .50
ALICE   TOTL   37.50
        CASH    1.00
971911 55FEE 22#04 CHCK  36.50
LINE 0
```

## PAYOFF STATEMENT

GMAC Mortgage Corporation  
500 Enterprise Road Suite 150  
Horsham PA 19044  
Payoff Department 1-319-236-5400  

July 23, 2003  

Requested by:  
Natasha/Gmac/Pa        215-682-1516  

Closer Fax #:  (877) 583-4297  

Loan Number:  221334154  
Mortgagor & Property Address:  

Wayne M. Byerly  
5 Jenkins Road  
Chesapeake City, MD 21915-1628  

| | | | |
|---|---|---|---|
| Interest From Date: | 08/01/2003 | Loan Type: | UNINSURED |
| Current Interest Rate: | 6.6250% | Guaranty Number: | |
| Escrow Balance: | 2,131.81 | Maturity Date: | 02/01/2009 |

****** THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION ******  
UPON RECEIPT OF FUNDS BY GMAC MORTGAGE  

| | |
|---|---|
| Principal | 21,768.84 |
| Interest Thru 07/31/2003 | 0.00 |
| Pof Rec Fee Paid By Homeowner | 30.00 |
| Total funds due for payoff:** | 21,798.84 |

Per Diem Interest required:*        $4.01  

* Add daily per diem interest from the interest through date to the date payoff funds are received in this office.

** WIRE TRANSFERS - PLEASE NOTE - a $5.50 incoming wire fee will be assessed as an additional fee to the above quoted figures when payoff funds are received via Wire Transfer. YOU WILL NEED TO ENSURE YOU ADD THIS FEE TO THE TOTAL FUNDS WIRED.

If this is an adjustable rate mortgage, it is subject to interest rate and prepayment penalty interest changes, and principal balance increases. Please contact our office prior to closing escrow.

**** IMPORTANT INFORMATION ****  
This is the amount necessary to pay this loan in full subject to final verification by the note holder. Title/Escrow will be held liable for any shortage resulting from a returned item on the last transaction and any payment made thereafter. *** DO NOT "STOP PAYMENT" *** on any previous payment which has already been credited to this account. Escrow funds, if any, will be debited to complete the payoff if necessary. The escrow amount included on this statement is subject to change.

If this loan is automatically drafted, drafting will continue through the date of payoff.

Please be aware, a late charge will be assessed for any payment or payoff not received within the grace period.

YOU ARE RESPONSIBLE FOR COMPLIANCE WITH THE TERMS WITHIN THIS DOCUMENT.

EXHIBIT C

07/23/2003  01:56PM

Page 2
221334154

ESCROW ACCOUNT: Issuance of this statement does not alter GMAC Mortgage's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. GMAC Mortgage is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds.

| Tax Information: | Amount | Due Date* |
|---|---|---|
| Cecil County | $955.03 | 12/31/2003 |
| Cecil County | $944.62 | 09/30/2003 |

* Disbursements can be made 30-45 days prior to due date.

*** PAYOFF FUNDS REMITTANCE INSTRUCTIONS ***

To receive same day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, title company check or wire transfer and received by GMAC Mortgage by 2:00 PM Eastern time. Payoff funds will not be applied or credited on weekends or holidays.

CHECK REMITTANCE: When remitting by check, include the customers name, account number, remitter's name and remitter's phone number on the check. The address for registered/express overnight mail delivery is:

    Payoff Processing Unit - FMSO
    GMAC Mortgage
    500 Enterprise Road Suite 150
    Horsham PA 19044

WIRE REMITTANCE: For immediate credit of your payoff funds, wired funds must be received by our bank and credited to our account by 2:00 PM Eastern time for same day processing. The wire must reference the following information.

    First Union National Bank
    For GMAC Mortgage
    ABA# 031201467
    Account# 2100018891633
    GMAC Mortgage Account# 221334154
    Name: Wayne M. Byerly
    Remitter Name: _____
    Remitter Phone# _____

Incomplete wire instructions may cause the wire funds to be returned, lost or not applied timely to the account.

PLEASE NOTE - A $5.50 incoming wire fee will be assessed as an additional fee to the above-quoted figures when payoff funds are received via wire transfer. YOU WILL NEED TO ENSURE YOU ADD THIS FEE TO THE TOTAL FUNDS WIRED.

SHORT PAYOFF FUNDS: If the funds received are not sufficient to pay the account in full, we will utilize funds from the escrow account to complete the payoff. If there is not an escrow account or the funds in the account are not sufficient to pay the account in full, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please request an amended statement by calling 1-800-766-4622 before remitting payoff funds.

FORWARDING ADDRESS: If the mailing address is changing, please complete the following information and return it with the payoff check. If remitting funds via wire, please fax this page to 1-319-236-7479.

Name: Wayne M. Byerly  New Mailing Address:_____
Name:               _____

07/23/2003   01:56PM

Page 3
221334154

GMAC MORTGAGE CORPORATION
500 ENTERPRISE ROAD SUITE 150
HORSHAM PA 19044

** PAYOFF FUNDS WILL ONLY BE ACCEPTED AT THE ABOVE ADDRESS, **
AND MUST BE IN THE FORM OF CERTIFIED FUNDS.

A) Interest is calculated on a 365 day year on a partial month basis. If interest is collected for 30 days, due date to due date, interest is calculated on a 360 day basis. (FEBRUARY IN ANY YEAR IS CALCULATED AS 30 DAYS) Interest must be calculated correctly to avoid delays in paying off. You will be responsible for any additional interest we would need to collect due to an improper calculation method being used. If you have any questions, please contact our office prior to payoff to verify procedures.

B) All payments on this loan must be kept current at all times during the escrow. The escrow holder is responsible for determining the current status of our loan prior to closing of their escrow. Issuance of this statement does not suspend the contract requirement to make monthly mortgage payments when due.

C) When all instructions in connection with the statement have been completed, and this is not a GMAC Mortgage refinance, you may release our beneficial interest in the fire insurance policy.

D) We reserve the right to cancel and/or amend the statement at any time prior to closing.

E) Escrow account:
   a) If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by State law, interest will be paid to the date escrow closes. Excess funds remaining in the escrow account, to include interest credited, shall first be applied to any deficit or shortage due before remittance to the customer.
   b) If this loan is escrowed for the payment of property taxes or insurance, we will pay them as billed/due without further notice. If an escrow deficit is created, we will issue an amended statement. Payment of any deficit is required before the loan can be paid in full.
   c) If forced insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to payoff the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks.
   d) Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

F) Receipt of payoff funds will be accepted on a conditional basis, subject to check clearance and verification of the correct remittance. All figures are subject to the clearance of funds in transit and confirmation by the mortgage holder.

G) AS A COURTESY TO OUR CUSTOMERS AND TO EXPEDITE THE PROCESSING OF THE ATTACHED LOAN PAYOFF, PLEASE PROVIDE GMAC MORTGAGE CORPORATION WITH AS MUCH INFORMATION AS POSSIBLE TO COMPLETE THE RELEASE OF LIEN. (i.e.: BOOK, PAGE, INSTRUMENT NUMBER, LEGAL DESCRIPTION).

H) THE RECONVEYANCE/SATISFACTION OF MORTGAGE WILL BE FORWARDED TO THE COUNTY RECORDER'S OFFICE AFTER RECEIPT OF PAYOFF FUNDS. IN MT AND UT, THE RELEASE WILL BE FORWARDED FOR PROCESSING TO THE COMPANY THAT PAID THE LOAN IN FULL.

I) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 2 business days of escrow closing.

J) Please allow five (5) business days for mail delivery. Payoff funds must reach the indicated office by 2:00 PM eastern time in order to be processed on the day of receipt. Funds must be in the form of a cashiers or certified check, unless remitted by a title company.

07/23/2003  01:56PM