IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Plaintiff, | : | |
| | : | CIVIL NO. L-02-3697 |
| v. | : | CIVIL NO. L-04-2479 |
| | : | |
| ONE 1995 GRADY WHITE 22' BOAT | : | |
| AND ONE LOAD RITE TRAILER | : | |
| | : | |
|     and | : | |
| | : | |
| 5 JENKINS ROAD, CHESAPEAKE, MD. | : | |
|     Defendants. | : | |

**MEMORANDUM**

The United States brings two forfeiture actions. The first is against 5 Jenkins Road, Chesapeake, Maryland ("residence"). The second is against One 1995 Grady White 22' Boat and One Load Rite Trailer ("boat and trailer"). The owner of the residence, boat, and trailer, Wayne M. Byerly, filed claims to the property.[1] The government moved for summary judgment in each case. For the reasons stated herein, the Court will, by separate order, consolidate the actions and enter judgment for the government in both.

**I.     Introduction**

Byerly pled guilty in Maryland State court to possession with intent to distribute a large quantity of marijuana. Although Byerly was never indicted federally, the United States brought the instant forfeiture actions against Byerly's residence (Civil No. 02-3697), as well as a 22 foot Grady White motor boat and trailer (Civil No. 04-2479). By statute, the federal government may

---

[1]     Byerly shared the residence with his wife, Lois Byerly. Nevertheless, Mrs. Byerly has not filed a claim to either the residence or the boat and trailer.

seize and confiscate property used to facilitate the distribution of illegal drugs.[2]  Byerly used the boat and trailer to tend his illegal crop.  Once harvested, Byerly would have processed and packaged the marijuana at his house, as he had done in the past.

Byerly concedes that the property is subject to forfeiture.  He opposes forfeiture on one ground only, namely that the seizure of so much property violates the Eighth Amendment's Excessive Fines Clause.[3]  This Court disagrees.

A forfeiture violates the Eighth Amendment only when it is "grossly disproportional" to the offense.[4]  When he was arrested, Byerly was growing 111 marijuana plants that, when harvested, would have yielded approximately 222 pounds of marijuana valued at $532,800.[5]  Under the Sentencing Guidelines, the base penalty for growing this quantity of marijuana is between 63 and 150 months imprisonment[6] and a fine up to $2 million.[7]

---

[2]   See 21 U.S.C. § 881.

[3]   The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[4]   United States v. Bajakajian, 524 U.S. 321, 334 (1998).

[5]   The police seized 111 plants, each of which could produce one to three pounds of processed marijuana.  Assuming that each plant yields two pounds, Byerly would be able to sell 222 pounds of marijuana (3,552 ounces).  Byerly admitted that he sold his 2001 crop of marijuana for $150 per ounce.  Thus, 3,552 ounces at $150 an ounce yields $532,800.

[6]   See U.S.S.G. § 2D1.1(c)(7).  If Byerly's plants could produce 222 pounds (about 101 kilograms) of processed marijuana, he would be at offense level 26.  See U.S.S.G. § 2D1.1(c)(7), note E.  Depending on his criminal history category, Byerly could receive 63 to 150 months imprisonment.

[7]   See 21 U.S.C. 841(b)(1)(B); U.S.S.G. § 5E1.2(c)(4) (imposing a fine up to the authorized statutory maximum).

Both Congress and the Sentencing Commission, therefore, consider the wholesale production of marijuana to be a serious offense carrying a substantial sentence. Against this backdrop, a forfeiture of property worth $225,000 is not excessive, particularly when the property was used to commit the crime.

**II.    Facts**

On August 9, 2002, Sergeant McDaniel, of the Maryland State Police, was in an airplane looking for marijuana plots when he saw a grove of marijuana plants in a wooded area off the Little Bohemia Creek in Cecil County.[8] (Decl. at p. 3.) On August 12, 2002, the state police went to the marijuana grove, where they found some fifty marijuana plants. (Decl. at p. 3.) They later detected a second plot of nearly fifty marijuana plants on the opposite side of the creek. The authorities knew that the groves were not wild because someone had supported the plants with bamboo stakes. (Decl. at p. 3.)

On September 29, 2002, the officers saw Byerly skipper the Grady White boat to the first plot. (Decl. at p. 4.) After spending an hour taping up the plants, Byerly motored across the creek to the second plot. (Decl. at p. 4.) After tending the second plot, Byerly motored to a ramp, trailered the boat, and towed it to his residence. (Decl. at p. 4.) After Byerly had left, the police seized 111 marijuana plants (66 at the first site and 45 at the second). (Decl. at p. 4.) The plants ranged from eight to fourteen feet tall. (Decl. at p. 4.) Each plant would yield one to three pounds of processed marijuana. (Decl. at p. 4.)

On the same day, the police searched Byerly's residence pursuant to a search warrant.

---

[8]    A declaration by Detective Sergeant Brian K. Reider provides the factual basis for the forfeitures. Byerly does not dispute the facts as set forth in Sergeant Reider's declaration.

(Decl. at p. 5.)  In the attic above the garage, the police found marijuana debris between the rafters and a six foot screen covered with marijuana debris.  (Decl. at p. 5.)  In Byerly's bedroom the police discovered over four pounds of marijuana, marijuana seeds, potting soil, twelve photographs of outdoor marijuana plots, and a photograph of Byerly showing off a stack of U.S. currency with a book titled, "Marijuana Grower's Guide 1997."  (Decl. at p. 5-6.)  In Byerly's shed, the police found three digital scales, five cut marijuana plants, and the same bamboo stakes and wire observed at the marijuana plots.  (Decl. at p. 6.)  In the boat, the police found several biodegradable pots that were identical to those found at the marijuana plots.  (Decl. at p. 6.)

Following the search, the officers interviewed Byerly, who said that he had discovered the marijuana growing wild in 2001.  He harvested the crop that year, and he replanted the beds with young marijuana plants in 2002.  (Decl. at p. 7.)  Byerly said he had sold the 2001 crop for $150.00 per ounce, receiving approximately $17,000.  (Decl. at p. 7.)

On April 10, 2003, Byerly pled guilty in Maryland state court to possession of marijuana with intent to distribute.  (Gov't Mot. Summ. J., Civil No. 04-2479, at p. 4.)  As part of his plea agreement, Byerly agreed to forfeit a 1993 Landau 16' boat and trailer (valued at $19,700), a 2000 Chevrolet pickup truck (valued at $20,000), $54,650 from a Sun National Bank account, $10,000 from a County Banking and Trust account,[9] and $670 cash.  (Plea Agreement at p. 4-5; Gov't Resp. Mot. Summ. J., Civil No. 04-2479, at p. 3.)[10]

---

[9] Byerly states that the state seized $125,000 from the County Banking and Trust account.  According to the government, however, the state released all but $10,000 to Lois Byerly after she demonstrated that most of the money was traceable to non-drug-related sources.  (Byerly Mot. Op. Mot. Summ. J. at p. 3; Gov't Mot. Resp. Mot. Op. at p. 3 n.1.)

[10] The forfeiture actions were subsequently transferred to the Drug Enforcement Agency.  Byerly did not contest those administrative forfeitures.  (Byerly Op. Mot. Summ. J.,

**III.   Analysis**

In a forfeiture action, the government bears an initial burden of establishing probable cause.[11]  With respect to the residence, the government met this burden by adducing proof that the house was used "to commit, or to facilitate the commission of," a drug felony.[12]  With respect to the boat and trailer, the government adduced proof that they were used "to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of" marijuana.[13]

Once the government has demonstrated probable cause, the burden shifts to the claimant to prove by a preponderance of the evidence that he has a valid defense.[14]  "If the claimant cannot produce any such evidence, summary judgment is properly granted to the government based upon a showing of probable cause."[15]

In opposing forfeiture, Byerly asserts only an Eighth Amendment defense.  Byerly argues that the combined forfeiture of the residence ($180,000), the boat, and trailer ($45,000[16]), when

---

Civil No. 02-3697, at p. 2.)

[11]   See United States v. 7715 Betsy Bruce Lane, 906 F.2d 110, 111 (4th Cir. 1990).

[12]   21 U.S.C. § 881(a)(7).  The government also argues that the boat and trailer are subject to forfeiture because they were purchased with proceeds traceable to the sale of marijuana.  See 21 U.S.C. § 881(a)(6).  The government has not provided evidence to support this argument, however.

[13]   Id. § 881(a)(4).

[14]   See 7715 Betsy Bruce Lane, 906 F.2d at 111.

[15]   Id.; United States v. 152 Char-Nor Manor Blvd., Chestertown, Md., 922 F. Supp. 1064, 1067 (D. Md. 1996).

[16]   The government filed two motions for summary judgment, one concerning the residence and the other the boat and trailer.  Byerly filed two nearly identical oppositions that claim the same value for both the residence and the boat and trailer: $180,000.  (Byerly's Op. Mot. Summ. J., Civil No. 04-2479, at p. 4.)  This is evidently a mistake on Byerly's part.

added to the state forfeitures ($105,020), yield a fine that the Eighth Amendment would consider excessive.

In <u>Austin v. United States</u>, 509 U.S. 602 (1993), the Supreme Court held that civil forfeitures under 21 U.S.C. § 881 constitute "fines" that are subject to the constraints of the Excessive Fines Clause. The <u>Austin</u> Court did not establish a test for determining when a forfeiture is excessive, however. Following <u>Austin</u>, the Circuits disagreed whether the test should focus on (i) the connection between the forfeited property and the crime, or (ii) whether the forfeiture is proportionate to the crime.[17]

The Supreme Court resolved the dispute in <u>United States v. Bajakajian</u>, 524 U.S. 321, 334 (1998). A punitive forfeiture is excessive, held the Court, only if it is "grossly disproportional to the gravity of a defendant's offense." <u>Id.</u> While the Supreme Court stated the general standard, it left to the lower courts the job of developing specific criteria. In <u>United

---

Accordingly, the Court accepts the value the government ascribes to the boat and trailer: $45,000. (Gov't's Rep. Op. Mot. Summ. J., Civil No. 04-2479, at p. 2.)

[17]   <u>Compare</u> <u>United States v. One Parcel Real Property Located at 427 & 429 Hall Street</u>, 74 F.3d 1165, 1170 (11th Cir. 1996) ("We conclude that the appropriate inquiry with respect to the Excessive Fines Clause is, and is only, a proportionality test."), <u>and</u> <u>United States v. Bieri</u>, 68 F.3d 232, 236 (8th Cir. 1995) (applying a gross disproportionality test), <u>with</u> <u>United States v. Chandler</u>, 36 F.3d 358, 365 (4th Cir. 1994) (adopting a three part instrumentality test which "considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder"); <u>see also</u> <u>United States v. Premises Known as RR No. 1 Box 224</u>, 14 F.3d 864, 876 (3d Cir. 1994) (leaving the question open but suggesting that both (i) the nexus between the property and the offense, and (ii) the relationship between the value of the forfeited property and the severity of the offense are relevant); <u>United States v. 829 Calle de Madero, Chaparral, Otero County, NM</u>, 100 F.3d 734, 738 (10th Cir. 1996) ("We agree that proportionality is relevant in evaluating excessiveness, however, the connection between the property and the offense remains relevant.").

States v. Bollin, the Fourth Circuit took up the task, directing the lower courts to compare the following factors: "the nature and extent of the criminal activity, its relation to other crimes, its penalties, and the harm it caused."[18]

In his Bollin analysis, Byerly aggregates the state and federal forfeitures (which total $330,020[19]). He then points to the maximum penalty he faced under Maryland law, which was four years imprisonment and/or a $5,000 fine. He argues that forfeiture of $330,020 is excessive when measured against a crime that Maryland treats with relative lenity.

Byerly's analysis is flawed. When addressing the propriety of a federal forfeiture, the Court looks only to the value of the property forfeited to the federal government. Several circuits have held that the state penalty and the state forfeitures are irrelevant.[20] The appropriate comparison, therefore, is between the combined value of the federal forfeitures and the equivalent federal penalty.

Under federal law, the statutory maximum penalty for possession with intent to distribute over 100 marijuana plants is 40 years imprisonment with a maximum fine of

---

[18]   264 F.3d 391, 417 (4th Cir. 2001) (citing United States v. Ahmad, 213 F.3d 805, 813 (4th Cir. 2000)).

[19]   $330,020 is the combined value of the federal forfeitures (the $180,000 residence plus the $45,000 boat and trailer) and the state forfeitures ($105,020).

[20]   See United States v. 829 Calle de Madero Chaparral, Otero County, NM, 100 F.3d 734, 739 (10th Cir. 1996) ("In evaluating excessiveness ... we do not mix state-imposed sanctions with federal sanctions. The Constitution does not bar the federal government from proscribing activities or conduct which a state has also prohibited.") (citing Abbate v. United States, 359 U.S. 187, 194 (1959)); United States v. 415 East Mitchell Avenue, Cincinnati, OH, 149 F.3d 472, 477 (6th Cir. 1998) (stating that when comparing the forfeiture to the penalty for the crime, the Court should look to the federal penalty rather than the state penalty); United States v. Premises and Real Property Located at No. 162-A, No. 1998-0082, 1999 WL 395372, at *2 (D.V.I. June 09, 1999) (comparing the federal forfeiture to the potential federal fine).

$2,000,000. See 21 U.S.C. 841(b)(1)(B). If sentenced under the United States Sentencing Guidelines, Byerly would face imprisonment of 63 to 150 months[21] and a $2,000,000 fine.[22] "[I]n a forfeiture action, if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive."[23] The forfeiture of Byerly's property (worth $225,000) is well within this guideline range.

The case law also supports the forfeiture. Byerly sold the 2001 crop for $17,000. Although Byerly might not have been able to sell it all, the 2002 crop would have had a street value of around $532,800. The Fourth and other Circuits have rejected Eighth Amendment challenges involving far greater disparities between the value of the property seized and the value of the marijuana at issue. See United States v. Brunk, No. 99-1480, 11 Fed. Appx. 147, 148 (4th Cir. April 25, 2001) (upholding the forfeiture of a 90 acre residence when the claimant sold 2.5 ounces of marijuana); United States v. 415 East Mitchell Avenue, Cincinnati, OH, 149 F.3d 472, 478 (6th Cir. 1998) (upholding forfeiture of a residence worth $220,000 when the claimant was charged with distributing marijuana worth $20,000); United States v. $180,893. U.S. Currency, No. 00-57132, 39 Fed. Appx. 570, 573 (9th Cir. 2002) (upholding forfeiture of $180,893 in currency when the claimant was convicted of growing and harvesting marijuana

---

[21] U.S.S.G. § 2D1.1(c)(7). The sentencing guidelines are no longer mandatory, and sentences are determined under the overarching statutory scheme of 18 U.S.C. § 3553(a). Nonetheless, it is clear under the statute, which includes the guidelines as a benchmark, that Byerly's federal sentence for possession with intent to distribute 111 marijuana plants would be substantially higher than a state sentence.

[22] U.S.S.G. § 5E1.2(c)(4).

[23] United States v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304, 1310 (11th Cir. 1999).

plants worth $456,000).

Accordingly, under the <u>Bollin</u> factors, the forfeiture of Byerly's residence, boat, and trailer is not grossly disproportionate to his offence.  This Court will, by separate order, grant the government's motions for summary judgment.


Dated this 16th day of February, 2006.

                                                              _____/s/_____
                                                              Benson Everett Legg
                                                               Chief Judge